In saying, in Bain v. Hunt, 10 N.C. 572, decided twelve months ago, that an action of assumpsit would not lie on a judgment rendered by a single justice of the peace, nothing more was (287) intended to be said than that such a document contained in itself an inference of law that the sum therein adjudged by the justice to be due from the defendant to the plaintiff was in law due, and that upon its being proven to be such a judgment, the debt itself was proven, and that in that respect it differed from such documents, writings, and promises on which an action of assumpsit could be supported, and which of themselves contained only inferences of fact, which must be drawn by a jury, if controverted, before the inference of law that there was a legal obligation could arise. A note not under seal, being only a promise to pay, creates not of itself an obligation to pay. There must be a consideration for the promise to create a legal obligation. This fact must be found by the jury or admitted on the record before the court can draw the inference of law that the promise creates that legal obligation. It is true that the jury may, from the note, make that inference, as it is evidence that the maker has so much money in his hands belonging to the payee, as lent, or had and received, but still it is matter of fact for the jury to infer, and which inference they are well warranted in making from the nature of man; for it is not to be presumed that a person would give that deliberate evidence of a promise to pay without having received *Page 129 
an adequate consideration. In Stamps v. Graves, ante, 102, I have expressed my opinion as to what operation the statute of Anne has upon such notes. I shall not here repeat it. As an exemplification of the effect of this doctrine, were the jury, in a special verdict, to find that the defendant had at such time and place made his promissory note to the plaintiff, wherein he had promised to pay him $100, and that he hath not paid the same or any part thereof, and pray the advice of the court as to the legal effect of the note, the court would be bound to render judgment for the defendant, because the jury had not found that the note was given on any consideration. But had they have added that the note was given for so much money lent, a horse, goods (288) sold, or any other adequate consideration, judgment would be rendered for the plaintiff; but if, instead of a note not under seal, the jury had found that the defendant had made an obligation under seal, and asked the advice of the court, judgment would have been rendered for the plaintiff, because a writing under seal imposes an obligation without a consideration. As an action of assumpsit will not lie on such sealed instrument, as it of itself imposes a legal obligation, so the Court said, in Hunt v. Bain, 10 N.C. 572, that as the justice's judgment of itself imposed a like obligation, an action of assumpsit would not lie on it. In the same manner, if a person binds himself by a valid obligation to perform a certain act, as to deliver corn, a horse, or the like, as the specialty itself imposes the duty, an action of assumpsit will not lie on it, but the party must bring an action of covenant. If I am asked the reason why the action of covenant, or an action of debt, is the proper remedy, and not an action of assumpsit, the only answer I can give is that it has pleased our forefathers to prescribe different forms of action for different injuries. It may be shown from the plea in the action of assumpsit that it is not adapted to such an instrument or document as of itself imports an obligation. The general issue is nonassumpsit, which denies the liability to pay without denying the instrument or document from whence that liability arises. If that document of itself imposes an obligation, it is putting in issue the legal inference; it is admitting, and at the same time denying, the liability of the defendant. Thus, if to debt on bond or recordnil debet is pleaded, it is bad, for, not denying the bond or record, the debt is admitted; it in fact amounts to a demurrer. But such plea is good to an action of debt on a note without seal, for you may admit the making of the note and yet deny the debt, for the debt arises not from the note alone; it must be made on consideration. The decision of Hunt v. Bain only establishes this, that a justice's judgment is evidence of a debt itself, and, therefore, an action of assumpsit will not lie on it. *Page 130 
(289) But it does not follow, as was contended in the argument of this case, that justices' judgments are records because an action of assumpsit will not lie upon them, or because, being established, they are conclusive evidence of a debt, or because they are entirely unlike foreign judgments or judgments of inferior courts of England; for a bond is unlike all these; and yet it is not a record, and the expressions used by the Court in delivering the opinion in Hunt v. Bain must be understood in reference to the object in view — they relate to that quality which they possess in common with records of concluding the parties from denying their affirmations, and not as to the mode of proving them. It was never thought that they, like records, carried on their face such marks of their own verity that they proved themselves, and did not receive trial by jury, witnesses, or otherwise, but by themselves. It is very easy to define what a record is, but it is not so easy to declare which are courts of record and which are not. Sir Edward Coke's definition is more like pointing out which are the courts of record in England than giving the distinguishing feature of such court. Other definitions are equally unsatisfactory. Were I to attempt one, I fear that it would be still more faulty; but we may with safety say that a justice's court is not a court of record, because the law has not prescribed a mode of authenticating and perpetuating their proceedings, because their procedures have not upon their face those indicia of verity which prove themselves upon a bare inspeximus, and that they require the aid of proofsdehors themselves; and from their nature and multiplicity, being capable of being made anywhere in the county wherever the justice may be, and being under the private seal and signature of the justice only, it is not to be believed that the Legislature intended that they should be received as genuine and authentic without the aid of proof. But this interferes not with the verity of their affirmations after having been proven. It is said that it must be a record because it was said in Hunt v. Bain to be entirely unlike the proceedings of the inferior courts of (290) England, and also unlike the judgments of a foreign court; therefore, it must be the judgment of a court of record. Does it follow that the Legislature cannot create a new class of documents, or that of necessity, because it cannot fall into one class, it must fall into the other, where the two classes embraced only all those which were in existence at the time, and not those afterwards formed? It is admitted that if a document was formed it would fall into that class already in existence with which it possessed common properties; but if it possessed common properties with neither, it would then form a class of itself. Such is this justice's judgment: it is unlike the judgment of a court of record, because it wants the power of proving itself; it is unlike the judgment *Page 131 
of the inferior courts in England and foreign judgments, because it differs from them in that its affirmation cannot be controverted, and these differences arise from this, because as to a foreign court, we know nothing of the justice of their laws; we presume they are just, but we do not know; we will permit the adverse party to destroy that presumption by proof, and more especially as to the matter of fact, and even as to law, if they are shown to be unjust; we will not enforce an unjust judgment of a foreign court, but will lean much in favor of their justice, and call in even the aid of their policy to show them to be just. As to the judgments of the inferior courts of England, they are mostly local, governed by particular laws, frequently held by private individuals, and do not proceed according to the course of the common law, and, therefore, their decisions are not reviewed by means of writs of error, the proceedings in which are according to the laws of the land, and they alone form the rule of decision; there is no graduation from them up to the Superior Court. It is true, they are superseded occasionally by the King's Bench, by means of certain discretionary writs which issue, as it were, on the supplication and not on the application of the party. To make their decisions more than prima facie evidence would operate an injury on the suitors, because they could not have them examined in the (291) regular way or as a matter of right. As to the courts held by our justices, they are entirely different; they are governed by the general laws of the land, and there is a regular graduation to the court of supreme jurisdiction by way of appeal, which of itself must make their judgments conclusive.
I have taken up much time to explain Hunt v. Bain, and to show that this case is unaffected by it, because that case has been much misunderstood, and, if not corrected, might lead to consequences never contemplated by the Court. The justice's judgment not proving itself, must, therefore, be supported by proofs, and, therefore, may be shown to be different from what, upon the face, it purports to be; it may be shown to be a perfect nullity. The jurisdiction of justices of the peace being confined to the counties for which they are appointed, the Granville justice had no jurisdiction in Franklin. His acts within the latter county were those of a private individual. Proof, therefore, that the transaction took place in Franklin, before a person who had no jurisdiction to act as a justice of the peace in that county, destroys its apparent official character, and reduces it to a mere statement or certificate of a private individual, and such proof should have been received. The other objection, that the justice should not be heard to impeach it, cannot prevail. The rule is that a party shall not allege his own turpitude or departure from correctness as a protection; but there is no such rule in our law. *Page 132 
Infamy and interest are the only grounds of excluding a witness who has sufficient understanding to know and feel the obligations of an oath.
There must be a new trial.
PER CURIAM. New trial.
Cited: Hamilton v. Parrish, 12 N.C. 415; Carroll v. McGee, 25 N.C. 15;Cobb v. Kornegay, 28 N.C. 360; S. v. Mangum, ib., 377; Reeves v.Davis, 80 N.C. 210.
(292)